May it please the court, good morning. My name is Ernest Jarrett and I appear on behalf of the plaintiff appellant in this matter. I would like to reserve four minutes of my time for rebuttal. This matter was commenced in the state court in the Oakland County Circuit Court in the state of Michigan and was removed to the district court by the defendant United Airlines. It's our position that the amount of controversy requirement was not satisfied and therefore the court improperly exercised jurisdiction in this matter. In this matter we had at the beginning of the case four individual and two corporate plaintiffs. The sum total of the damages sought by the plaintiffs at that time was slightly more than $53,000. The court nevertheless determined that the $75,000 jurisdictional minimum had been satisfied based upon the United's claim that the cost of compliance with an injunction where one issue would exceed $75,000. He did that in two matters. First, at the end of Yes, Your Honor. To get right down to the nub of the issue, you've got in your reply brief here, page four, that you say all the United would be required to do is to purge its computers of whatever misinformation it has about any of the plaintiffs talking about the travel agents and so on, and to at least notify them that it is the plaintiffs when a fully processed transaction is to be reversed for some reason. The airline here says that they would have to change their entire operation of accepting reservations instead of just purging this one error that they had made, which apparently they acknowledge that it was an error, right? Or do they? I don't know that they've ever formally acknowledged it. I believe that it's impossible for them to deny that there was no credit card fraud involved. But anyway, it's not an issue about whether there was any way to purge their system, accounting and computer system of this one particular error. So the issue is as between whether that's all it takes or whether they're right in saying that they would have to revise their whole accounting system to correct this problem. That's the issue, isn't it? Well that was United's contingent, that's correct. I think that intuitively at the time that we filed the motion for remand, and what we later learned in discovery is that that was completely ridiculous. Just as any incorrect... You mean that they would have to change their whole system? That they would have to overhaul their entire system, retrain all of their fraud personnel and so on, which is what they contended. But in the complaint, didn't the plaintiff ask for, well there were I guess multiple plaintiffs, but didn't the plaintiff, didn't the complaint ask for relief for those specified named plaintiffs and ask United to take measures so that this wouldn't happen to other people? No, we did not in any way seek to have the injunctive relief cover anything other than the plaintiffs and the clients of the plaintiff-exclusive events. And that's still your position, correct? You're not seeking either class relief or relief on behalf of anybody who's not before the court? That's correct. And what we... Your position is you've never sought anything further than that. That was your original contention and is still your contention, that's what you're saying. That's correct. And even if there's some ambiguity, or some ambiguity in the complaint, I mean you would be stuck presumably with the position you've taken in the district court and before this court with respect to the nature of relief you would seek going forward. Absolutely correct. What we didn't know at the time that the motion for remand was filed, but what United had to know, was that the ticket cancellations in June and July of 2011 with the stated basis for suspected credit card fraud, that those cancellations really were not because United had any thoughts that there was credit card fraud in those transactions per se, but rather had cross-referenced the email address for the plaintiff, Ruth Jarrett Cooper, to a May 2010 transaction in which there was a noted confirmation of fraud involved, notwithstanding the fact that the investigator in that particular case had not confirmed anything. She had merely placed one phone call to the credit card holder, was unable to reach him, and then after not speaking with him, indicated that there had been confirmed fraud. This is a year and a half, or a year and a few months. What you're saying is that was just clearly a mistake made at that time which caused this problem. Absolutely, because what we later learned in discovery after we knew that that was the basis for... But you say the other side has never fully acknowledged that that was what the problem was. I don't think that they've confirmed, excuse me, I don't think that... But they haven't denied either, you say. Right, we've taken the deposition of the card holder in the May transaction who absolutely stated without equivocation that he authorized Ruth Jarrett Cooper and Exclusive Events to use his credit card for the purposes of that transaction. So the... I'm sorry. I'm sorry. Well, the relief you seek is the damages that arose from the cancellation of the reservations for Ms. Jarrett Cooper and her clients and a correction of United's records so that this will not happen on a future occasion to Ms. Jarrett Cooper or her clients. Absolutely correct. And that was stated in my motion for remand which is at Record Entry 9-1 at ID page number 59. It states, while all plaintiffs seek damages as one form of relief, the primary objective of this suit is to obtain injunctive relief to prevent United's continued cancellation of tickets purchased for future flights by or on behalf of any plaintiff or clients of plaintiff Exclusive Events based upon false, erroneous, or pretextual reasons and further precluding United from any such ticket cancellation without making reasonable inquiries. And the any such language related is all one sentence and that related to what we were for tickets purchased by any plaintiff or on behalf of the plaintiff clients at Exclusive Events. That was the scope of it. The deposition of Paula Amador, who was the supervisor of the Fraud Prevention Section, she indicates very easily that that, or very clearly that deletion of erroneous information is something that could be done without any overhaul of any system, without the requirement of any retraining, and that could be done by herself for whatever time it takes to delete the incorrect or erroneous information. To suggest to one of her subordinates, one of the people that she supervises, a person without the qualifications to make such an assessment, that a complete overhaul of this computer system, of the procedures within this section, and a requirement of retraining everyone simply to delete this incorrect information was preposterous. So when United says that the plaintiffs seek to preclude United from canceling any tickets without notifying the booking agent, cardholder, and passenger involved, irrespective of whether the ticket was canceled due to suspected fraud or some other reason, that this is going to your complaint too broadly and reading into their claim that you didn't make. Absolutely correct. And I might add that Ms. Amador, again, the supervisor, indicates in her deposition, we showed, we brought forth proof that the airline is capable of notifying passengers or anyone involved of any flight change in flight status. They do that routinely when there's a gate change, when there's a delay, when there's a cancellation due to equipment or whatever. Ms. Amador indicates that the fraud department did not notify individuals upon cancellation of tickets because they elected not to do so. It's not that they didn't have the capacity to do so, they do it for all other reasons. They simply elected not to notify people once tickets were canceled for purported fraudulent purposes and she indicated she just, and I'm not quoting but paraphrasing, they didn't want to alert the fraudsters and that's essentially what she said as to the fact that they were onto them. That's an election, that's not something that requires a complete overhaul of the system. Can you, well, your time's just about up so I won't ask you that. Thank you. Good morning, Your Honors. May it please the Court, I am William Adams, I represent United Airlines. I appreciate your attention to this case today. I do want to address immediately what the main question from the bench seems to be, that the only injunctive relief that was sought specifically pertained to these plaintiffs. The district court didn't see it that way and it didn't see it that way because of what the plaintiffs and the appellant had filed when they moved forward. Well, you know, it kind of doesn't matter what they filed. I mean, if you listen to the questions that were asked of Mr. Jarrett, you know, it's pretty clear that even if there was some ambiguity, that's not what's sought and it doesn't appear that United is under any sort of exposure at this point for anything other than correcting any wrongs done to the plaintiffs in this case. Your Honor, with all due respect, the plaintiffs expressly asked for injunctive relief. But what are you, I mean, what are you, why would that be an appropriate valuing of the amount in controversy at this point, even if there was some, even if there was some ambiguity to begin with and perhaps you in good faith thought that's what they were seeking? I mean, why wouldn't, you know? Your Honor, that's exactly what, in good faith, we were assuming that they sought based on their filings when they expressly asked for an injunctive relief. Your Honor, we have to look to our jurisdiction today. I understand, Your Honor. And your jurisdiction... If there's no diversity jurisdiction today, the fact that there could have been a mistake in the court below because there was a misunderstanding as to the relief sought, but we're as clear, then we still have, we've got this problem of do we have diversity jurisdiction. You follow me? Your Honor, I understand what your concern is, but I think even if you are to view this from the plaintiff's standpoint and you are to value the injunctive relief from their standpoint, it clearly said, as far as the appellant is concerned, none of the other plaintiffs have appealed this case. As far as the appellant was concerned, her position was that if the injunction were not granted as to her, she would entirely go out of business. Well, going back to the initial and threshold question, in order to grant or to provide the relief that's sought by Ms. Jarrett Cooper, why would it require this massive international retooling of United's operations to provide that type of relief, that training obligation, I should say? Well, Your Honor, and again, I think it comes back to the injunctive relief that was clearly sought by the plaintiffs. Well, wait a minute. Why is that clearly sought? I'm looking right now at the complaint that was filed in this case. It doesn't mention anybody other than the plaintiffs here. It does seek injunctive relief without specifying exactly what injunctive relief is sought, but why would you think that a complaint that seeks only injunctive relief on behalf of specific plaintiffs could seek injunctive relief on behalf of anybody else? They don't purport to represent anybody else. I mean, certainly if United elected, because of this lawsuit, to change its system, that might be costly, but that would be United's election. It wouldn't have anything whatever to do with this lawsuit. I mean, I don't see how you can transform a complaint, even if it asks for injunctive relief generally. I mean, you wouldn't want United, certainly in the world of litigation, would not want to face a rule in which a lawsuit brought on behalf of individual plaintiffs could end up appropriately granting relief on behalf of a whole bunch of people not before the court. I mean, the rule you're arguing for here, you might think it's in your interest in terms of getting into federal court in this case, but I can hardly see how it would be in the interest of United as a general matter to be taking that position. Your Honor, I can answer that question for you. Okay. The complaint, when it was filed in the federal court, was accompanied by an ex parte motion for reasons to show cause why injunctive relief should not issue, which we cited in our brief to the record. That's part of docket number one. And in that motion, the plaintiffs clearly said that they were seeking relief, this kind of injunctive relief, with respect to ticketing operations on behalf of themselves and on behalf of others similar, it was phrased similarly situation. That was what was filed in the state court when United got the case. When the second motion to remand was filed, plaintiff repeated this request. Plaintiffs also submit that the defendant should be precluded from cancellation of any tickets without notifying the booking agent, cardholder, and passenger involved. So United, of course, doesn't want... The booking agent is this booking agent, right? Not within the context of their... You can read it the way you want to. You know, if you never have a hearing and nobody ever looks at each other and says anything, you can have misunderstanding, but we understand what it is today, don't we? Well, today this is what the plaintiff is representing, but again, I would suggest that... Well, he says that was what he was always representing, and you misunderstood it, but we don't have any jurisdiction over this case now, it would seem to me, and, you know, it doesn't just want to get in federal courts because you think you have an advantage there or whatever, but that's not the way we look at it. With all due respect, Your Honor, that was the way that the court was... The district court viewed this case. The district court did recognize what plaintiff clearly requested, which was injunctive relief pertaining to all... I don't think... You say it was what plaintiff clearly requested, and I think just by saying it's clear doesn't mean that it's clear, because in the papers filed with this court, it is far less than clear that the plaintiff sought this broad-based relief that allows you to extrapolate that and layer it over the entire United System for a medium or jurisdictional amount. It just is not evident from the plaintiff's... You know, it would have been just as easy to have responded to the motions that were filed by saying, well, the plaintiff can't seek relief on behalf of others because that's not what his complaint alleged, or, you know, the plaintiff's complaint does not allege any relief or any claims on behalf of other individuals, therefore they can't get this injunction. You know, I mean, they're just... And it would be pretty easy in this case to be drawn into looking at some of the circuit, the different ways circuits have looked at the valuing of injunctive relief, but it just doesn't... It doesn't seem appropriate or necessary to get there in this case. Well, I don't believe that this court would need to address the circuit split at all in this case, because plaintiff never valued the injunctive relief. Question, Counselor. Yes, sir. Why do you want so bad to be in federal court instead of state court where the case was filed? What is the motive here? The motive was to be in... Because you can look at it, certainly the way they're looking at it is, and all you'd have to do is to make sure that the case is limited to what he says now and what you can to that type of recovery. Why didn't you try to narrow it? Why do you want to broaden the injunction against yourselves? What is the motive for getting in federal court? That's my... I don't understand it. Your Honor, the motive for being in federal court in this case is that is what the client united, direct... That is what they prefer. They told you. To be in federal court. They have a big staff of lawyers who make judgments about this or what? Is that what happens? You're hired by other lawyers who are on the legal staff? I'm retained by United to represent them in Michigan. They have a legal staff in Illinois, but they don't have a regional staff. So why does the staff, why do they want to be in federal court so bad? This is their preference to be in federal court. Well, have you counseled with them about the... I don't even want to know the answer to that question. Excuse me. I don't know. I mean, it just seems absolutely in contrary to United's interest to seek to broaden... In this case, this case would have been over had it remained in state court. You wouldn't be here incurring fees. And you know, you're here, you're arguing that they can get this broad injunctive relief. I mean, you're... Counsel. I'm sorry. Don't be sorry. But let me just say, if you had, you know, 90 seconds uninterrupted to tell us something, what would you want to tell us? I would want to tell you that the problem in this case, the main problem was when this jurisdiction... I mean, we're talking a lot about why United didn't do this, why United didn't do that. We were presented with a broad request for injunctive relief that sets off alarm bells. I know your honors are saying, well, that's not at all clear to you. Plaintiff never stepped away from that until after the motions for remand were decided. And then the standpoint was, well, it only pertains to us. Okay. Now, I told you you'd have 90 seconds, but, you know, I misled you. So, you know, even though the plaintiff is the master of the plaintiff's complaint, the plaintiff isn't necessarily the master of the litigation. So when the plaintiff files something, as Judge Givens and Judge Merritt said earlier, you know, there's a way to respond if it's less than clear and find out exactly what it is that the plaintiff is after, but you didn't do that. You all started down that path, and here we are. Well, that's because your staff people back at the airlines just like to be in federal court. Well, your honor, you know, I did want to... Even though, you know, it may lead to a lot more costs for the airline and so on, I mean, it's just beyond, sometimes the mistakes that lawyers can make is mind-boggling. Well, your honor, with all due respect, I don't, and again, this is because this is my work on this case, and I represented United, and I did it to the best of my ability. I don't believe a mistake was made in this case. United has removal rights. Lawyers never believe that they have been mistaken. If you said you were mistaken before, you'd be the first I can remember in some time. Well, your honor, again, we had a broad request for injunctive relief. It set off alarm bells. The clarification between plaintiff's counsel and defendant's counsel was never available because we had a series of motions to remand, motions to reconsider, et cetera, and it seemed like these positions were entrenched. The plaintiff was arguing that United lied about what would be the cost of its compliance with this injunctive relief, but never addressed the issue of the injunctive relief really head-on. They addressed the issue of aggregation of damages, et cetera. United believed, from the get-go, based on plaintiff's filings, two filings, in fact, the original motion for show cause, why an injunctive relief order should not issue, and the second emergency motion for preliminary injunction, when plaintiff said, I want to change United's operations with respect to everyone, that that's what was going on. After the judge decided that, that's when this issue... We've given you a hard time, and we know that... Or a little bit of a hard time. We've been nice, I hope. But, you know, we know that in retrospect, and we get to look at it in retrospect, things are sometimes clearer than they might have been as they were developing, and we realize that parties react to each other, and although you've ended up getting the end of the Why are you here questioning today? I mean, we know that there are things that happen in litigation, and we know that sometimes the questions that perhaps should be asked at the end of the day are not asked at the beginning of the day. So take it all, please, in the course of your representation of clients. I understand, Your Honor. We've all been lawyers to one kind or another in the past, Counsel. I think you gave me the honest answer, though, to the motivation question when you said, Well, that's just what the airline wants to do. They want to be in federal court. And I think that is the correct answer, and you've got to, like lawyers do, make up a good argument, rationale for why what the client wants to do is what should be done. The problem is the client doesn't always know what it should do, and particularly lawyers who sit in an office and never litigate anything in any courtroom anywhere. And it's not true that it's in their interest always to be in federal court. It depends. If I may, I'm running out of time here. If I may, Your Honors, and just not to go over any of the area that we have gone over, if we are to look at the value of the injunctive relief to plaintiffs, plaintiffs have never presented any evidence on that. We don't have any evidence of that whatsoever. They only address their monetary relief. I would advance to this panel that you're looking at an injunctive order that plaintiffs said, without the benefit of getting this order, they would be placed completely out of business. In addition to the damages, the monetary damages they had incurred already. We've made an argument in the briefs that the value of that injunctive relief more likely than not exceeded $75,000. If we're looking at what happened after the motions to remand, plaintiffs' own testimony said that with respect to one client alone, her damages were $1,500 a month. She has more than one client. She says that at least five stopped doing business with her because of the situation. So I think the evidence is there that the value of the injunctive relief to plaintiffs. You mean just for the plaintiff's side? Exactly correct, Your Honor. They've limited it, though. Well, but the value of the injunctive relief to them, I think, would exceed $75,000, even with plaintiffs' limited requests, because this is what they said. If they didn't get the injunction that applied only to them, they'd be forced absolutely out of business. And this is in addition to the monetary damages. I take it you don't mind fixing it so that this claim of fraud is no longer made, right? Well, Your Honor, that issue of deleting all this information in the… Do you now know that this was a mistake made? Absolutely not, Your Honor. You don't know? You think she may still be a crook? No, Your Honor. I don't want to say that. The way the plaintiff structures her credit card… As I understand it, you didn't allow the people to fly because you thought that the travel agent was crooked, fraudulent. No, Your Honor. The travel arrangement, the way she structures her transactions, she uses someone else's credit card, she has the tickets delivered to a different address that doesn't match that on the credit card, et cetera. All that kind of information raises flags in the fraud system. It protects all consumers. When there's something about a credit card transaction that just doesn't match up, the tickets are canceled and the money is refunded. Plaintiff could structure her transactions in a different way to not have this problem. United obviously has customer service representatives, and now that this problem has surfaced, as a preliminary business step, couldn't United have some of their people meet with this woman and you all explain that rather than putting the flyers at risk by canceling their tickets without notice? Those are the kind of things that you all could talk about if you get together, sit down, and figure out what the real problems are and figure out what possible solutions there are, because United obviously wants people to fly with it. There are different travel agents who use different procedures, and so it seems to me that, and I don't know what the answers are, but certainly you all could figure it out. Well, Your Honor, just to clarify, she's not a travel agent. She has her own. She's a booking agent. I believe, and this wasn't an issue in the case, I haven't looked carefully at it, she's not licensed as a travel agent in Michigan, I believe. What she does is she takes people's credit card information, she calls up, she gets the tickets for them, delivered to addresses that don't match that on the credit card, even when United attempted to call. But that's beside the point right now. My point is, you say you're not sure this has been a mistake, this lawsuit has been filed, there are questions about our jurisdiction. I'm just saying that there are measures, I think, that the parties can take to sort of understand what the issues are. We're not trying to settle the case. No, we're not trying to do that. But we're trying to tell you that as much as United might like to be in federal court, in this instance, this may not be the place for it. And I'm not making a ruling on that. I understand. I will take that back to my lawyer. Well, and, you know, Judge Donnell points out that sometimes there are more practical alternatives than litigation that result in less cost to the clients and just a more amicable resolution of disputes is a good thing. Thank you, Your Honor. Okay, I think Mr. But less, sometimes less profitable to the lawyer. Thank you, Your Honor. Okay, I think Mr. Jarrett has reserved some rebuttal time. Your Honor, I don't have much to say except for two things. First, your argument is for you. When you find that you won, you don't need to say too much. Then I don't even have those two things to say. Thank you very much, Your Honor. We appreciate the argument both of you have given, and we will certainly consider the case carefully, even though we've kind of given you a pretty good flavor of the current thought about it, I think. Thank you very much.